1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FACEBOOK, INC. AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE, et al.,<br><br>Defendants. | Case No. 17-cv-06490-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 3

STATEMENT ................................................................................................................................... 4

1.  The IRS Office of Appeals ....................................................................................................... 4

2.  The "Taxpayer Bill of Rights" ("TBOR") .............................................................................. 6

  2.1   The Taxpayer Advocate Service ("TAS")'s 2007 Recommendation that Congress
        Enact a Statutory TBOR ............................................................................................... 6

  2.2   Legislative Proposals for a TBOR Between 2008 and 2013 ........................................... 8

  2.3   The TAS's 2013 Recommendations that the IRS Adopt a TBOR ................................... 9

  2.4   The IRS's 2014 Adoption of a TBOR ......................................................................... 12

  2.5   The TAS's 2014 Recommendation that Congress Enact a Statutory TBOR ................. 12

2.6     Congress's 2015 Enactment of a Statutory TBOR ............................................... 13

3.  The IRS's Current Revenue Procedure Regarding Referring Tax Cases to IRS Appeals ........ 15

4.  Facebook's Tax Case ............................................................................................. 16

5.  Facebook's Legal Claims ....................................................................................... 18

STANDARD OF REVIEW ............................................................................................. 18

ANALYSIS ................................................................................................................... 19

1.  Standing .................................................................................................................. 19

    1.1     Governing Law ............................................................................................. 19

    1.2     Application .................................................................................................... 20

        1.2.1     Facebook has no pre-TBOR enforceable right to take its tax case to IRS
                   Appeals ............................................................................................... 21

        1.2.2     The 2015 TBOR did not grant Facebook any new enforceable rights ................. 22

        1.2.3     Even assuming that the 2015 TBOR granted Facebook a new enforceable
                   right to appeal "in an independent forum," Facebook fails to establish that the
                   "independent forum" must be IRS Appeals ......................................................... 25

2.  The Administrative Procedure Act ......................................................................... 29

    2.1     Governing Law ............................................................................................. 29

    2.2     Application .................................................................................................... 30

        2.2.1     The IRS's issuance of Revenue Procedure 2016-22 is not reviewable because
                   it was not a final agency action ......................................................................... 30

        2.2.2     The IRS's decision not to refer Facebook's tax case to IRS Appeals is not
                   reviewable because it was not a final agency action ......................................... 31

3.  Mandamus .............................................................................................................. 32

CONCLUSION ............................................................................................................. 32

**INTRODUCTION**

This case arises in connection with a petition that Facebook, Inc. filed in the U.S. Tax Court. Facebook is contesting a determination by the Internal Revenue Service that it has been underreporting its income for tax purposes since 2010. The IRS asserts that Facebook undervalued certain intangible property that it transferred to its Ireland-based subsidiary by approximately $7 billion; Facebook contests that assertion.

Facebook wants the IRS attorneys who are litigating its tax case before the Tax Court to refer its case to the independent IRS Office of Appeals ("IRS Appeals") for alternative dispute resolution. Facebook maintains that it has an enforceable right to access IRS Appeals. Its main argument is that the Protecting Americans from Tax Hikes Act of 2015 ("PATH Act") enacted a statutory "taxpayer bill of rights," codified at 26 U.S.C. § 7803(a)(3), and that one of these rights — "the right to appeal a decision of the Internal Revenue Service in an independent forum," 26 U.S.C. § 7803(a)(3)(E) — gives it an enforceable right to take its tax case to IRS Appeals in lieu of litigation before the Tax Court.

Facebook brings two claims under the Administrative Procedure Act ("APA"), alleging that the IRS acted arbitrarily, capriciously, and in violation of law, in refusing to refer its tax case to IRS Appeals. Facebook also brings a claim for mandamus, asking the court to order the IRS to refer its tax case to IRS Appeals. The IRS moved to dismiss Facebook's complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Facebook lacks standing and that the IRS's decision not to refer Facebook's tax case to IRS Appeals is not reviewable under the APA.[1] Facebook opposed the IRS's motion,[2] and the IRS filed a reply.[3] The U.S. Chamber of Commerce filed an amicus brief arguing against dismissal.[4] The court held a hearing on April 19, 2018.

---

[1] IRS Mot. – ECF No. 19. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Facebook Opp'n – ECF No. 22.

[3] IRS Reply – ECF No. 32.

[4] Chamber of Commerce Br. – ECF No. 29.

Facebook does not have an enforceable right to take its tax case to IRS Appeals or to compel the IRS to do so. Facebook therefore lacks Article III standing, because the deprivation of a nonexistent right to access IRS Appeals does not constitute injury in fact. Additionally, the IRS's decision not to refer Facebook's tax case to IRS Appeals is not reviewable under the APA. The court therefore grants the IRS's motion to dismiss this case. Because the defects in Facebook's complaint cannot be cured, dismissal is with prejudice.

## STATEMENT

### 1. The IRS Office of Appeals

The IRS Office of Appeals is an independent office within the IRS. *See* Internal Revenue Serv., *Appeals – An Independent Organization* (Nov. 16, 2017), https://www.irs.gov/compliance/appeals/appeals-an-independent-organization (last visited May 14, 2018).[5] IRS Appeals's mission is "[t]o resolve tax controversies, without litigation, on a basis which is fair and impartial to both the Government and the taxpayer in a manner that will enhance voluntary compliance and public confidence in the integrity and efficiency of the Service." *Id.* "To resolve disputes effectively, Appeals must show itself to be objective, impartial, and neutral in fact as well as appearance." *Id.* IRS Appeals officers are not to conduct tax-compliance actions. *See* Internal Revenue Serv., *Fact Sheet: IRS Clarifies Office of Appeals Policies* (Oct. 1, 2016), *available at* https://www.irs.gov/pub/irs-utl/factsheet.pdf (last visited May 14, 2018). Instead, they "attempt to settle a case after IRS compliance functions (Accounts Management, Collection, and Examination) have made a determination with which the taxpayer disagrees." *Id.*

While IRS Appeals was administratively formed in 1927, there was no statutory requirement for the IRS to maintain this internal appeals office prior to 1998. In 1998, Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 ("RRA"). Pub. L. No. 105-206,

---

[5] The court may take judicial notice of information on government websites that is not reasonably subject to dispute, as a matter of public record. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

112 Stat. 685 (1998). The RRA for the first time specified the creation of an "independent appeals function within the Internal Revenue Service" as a statutory mandate. *Id.* § 1001(a), 112 Stat. at 689.

The RRA granted taxpayers statutory rights to take certain matters to IRS Appeals. For example, under certain circumstances, the RRA granted taxpayers whose property is subject to an IRS lien under 26 U.S.C. § 6321 a statutory right to a hearing before IRS Appeals. 26 U.S.C. § 6320(b)(1) (enacted by RRA § 3401, 112 Stat. at 746). Similarly, under certain circumstances, the RRA granted taxpayers the right to a hearing before IRS Appeals before the IRS levies the taxpayer's property or right to property. 26 U.S.C. § 6330(b)(1) (enacted by RRA § 3401, 112 Stat. at 748). The RRA also instructed the Treasury Department to establish procedures that allow a taxpayer to appeal IRS rejections of proposed offer-in-compromise or installment agreements under 26 U.S.C. §§ 6159 or 7122 to IRS Appeals. 26 U.S.C. § 7122(e) (enacted by RRA § 2462, 112 Stat. at 766).

The IRS maintains that the RRA did not establish a recognized right for taxpayers to take tax cases to IRS Appeals generally. Before and after the RRA was enacted, the IRS maintained that it had discretion as to whether tax cases would be referred to IRS Appeals. The relevant IRS Revenue Procedure in place before the RRA was enacted provided that the Director of Tax Litigation had the discretion (following consultations) to determine whether a tax case (or particular issues within a case) "should not be considered by Appeals." Rev. Proc. 87-24 § 2.08, 1987-1 C.B. 720, 721 (superseded by Rev. Proc. 2016-22, 2016-15 I.R.B. 577) ("The Director of the Tax Litigation Division . . . may, after consulting with the Director of the Appeals Division and the appropriate Regional Counsel, determine that a case, or an issue or issues in a case, should not be considered by Appeals. In such a situation Appeals will forego settlement authority over such case or issues."). The IRS continued to maintain this procedure for over a decade after the RRA was enacted in 1998 and did not recognize an enforceable right of taxpayers to take their cases to IRS Appeals.

Courts have agreed that there was no general right to take tax cases to IRS Appeals. The Tax Court — an Article I court independent of the IRS, *see* 26 U.S.C. § 7441 — affirmed in 1996

(before the RRA) and again in 2005 (after the RRA) that taxpayers did not have an enforceable right to take tax cases to IRS Appeals. *Swanson v. Comm'r*, 106 T.C. 76, 99–100 (1996) (holding that no right exists to an IRS Appeals conference once a taxpayer's case is docketed in the Tax Court); *Estate of Weiss v. Comm'r*, 90 T.C.M. (CCH) 566, 2005 WL 3418160, at *1–2 (2005) (holding after enactment of the RRA that taxpayers did not have a substantive right to take their case to IRS Appeals and that there was no statutory basis for such a right). Federal Article III courts also agreed that there was no general right for a taxpayer to take its tax case to IRS Appeals. *New Hope Servs., Inc. v. United States*, 285 F.3d 568, 572 (7th Cir. 2002) ("there is no provision in the procedural rules for a taxpayer request for an Appeals Office conference" for a case docketed in Tax Court) (citing *Swanson*, 106 T.C. at 99–100); *Vosters v. United States*, No. C-88-20458-WAI, 1989 WL 90554, at *2 (N.D. Cal. June 2, 1989) (rejecting claim that "the IRS violated its own procedural rules by denying the taxpayer an administrative hearing before the Appellant Review Division" because the IRS's "procedural rules are directory rather than mandatory") (citing *Rosenberg v. Comm'r*, 450 F.2d 529, 533 (10th Cir. 1971)).

## 2. The "Taxpayer Bill of Rights" ("TBOR")[6]

### 2.1 The Taxpayer Advocate Service ("TAS")'s 2007 Recommendation that Congress Enact a Statutory TBOR

The Taxpayer Advocate Service is an independent organization within the IRS that advocates on behalf of taxpayers at the IRS. *See* Taxpayer Advocate Serv., *Who We Are*, https://taxpayeradvocate.irs.gov/about/who-we-are (last visited May 14, 2018). Among other things, the TAS submits two reports to Congress each year: an annual report that analyzes problems encountered by taxpayers and legislative and administrative recommendations for solving those problems, and an objectives report that describes the goals and activities planned by the Office of the Taxpayer Advocate for the coming fiscal year. *See* Internal Revenue Serv.,

---

[6] This opinion uses "TBOR" to refer to the term "taxpayer bill of rights" generically and not to refer to any particular legislative or administrative pronouncement or enactment.

Taxpayer Advocate Serv., *Reports to Congress*, https://taxpayeradvocate.irs.gov/reports (last visited May 14, 2018).

In its 2007 annual report, the TAS recommended that (among other things) Congress enact a statutory taxpayer bill of rights. The TAS report stated:

> The Internal Revenue Code does not currently contain a concise and explicit list of taxpayer rights and obligations. . . .
>
> . . . .
>
> While the Internal Revenue Code contains significant rights, protections, and expectations of taxpayers, these provisions are scattered throughout the Code and the [Internal Revenue Manual]. They are not easily accessible to taxpayers, nor are they written in language that is readily understandable by many taxpayers.
>
> . . . .
>
> The National Taxpayer Advocate believes that taxpayers will be reassured in the essential fairness of the tax system and more disposed to voluntarily comply with the tax laws if they can see and understand a clear declaration of their rights as taxpayers. As taxpayers understand that specific statutory protections flow from these rights, they will be able to better avail themselves of these protections. IRS employees, in turn, will better understand why these specific protections exist. Moreover, a clear linkage between taxpayer rights and responsibilities will establish expectations of taxpayer behavior that are easily understandable and fulfilled.
>
> Establishing a statutory Taxpayer Bill of Rights will reassure taxpayers that the tax system is essentially fair and just, and inform taxpayers of the treatment they can expect from their government as well as of the behavior the government expects of them. Revising Publication 1 so that it sets forth the Taxpayer Bill of Rights in its entirety and then relates specific statutory protections and obligations to those rights will enable taxpayers to avail themselves of those rights and conform their behavior accordingly.

Taxpayer Advocate Serv., *2007 Annual Report to Congress* at 481, 485 (2007) (*2007 TAS Report*), *available at* https://www.irs.gov/advocate/national-taxpayer-advocates-2007-annual-report-to-congress (last visited May 14, 2018). The TAS recommended a taxpayer bill of ten rights: (1) the "right to be informed," (2) the "right to be assisted," (3) the "right to be heard," (4) the "right to pay no more than the correct amount of tax," (5) the "right of appeal," (6) the "right to certainty," (7) the "right to privacy," (8) the "right to confidentiality," (9) the "right to representation," and (10) the "right to a fair and just tax system." *Id.* at 486–88 (capitalization removed).

For the fifth right — the "right of appeal" — the TAS recommended that:

> Taxpayers have the right to be advised of and avail themselves of a prompt administrative appeal that provides an impartial review of all compliance actions (unless expressly barred by statute) and an explanation of the appeals decision. Taxpayers have the right to expect that Appeals personnel will not engage in ex parte communications with IRS compliance personnel except in statutorily permitted circumstances.

*Id.* at 487.

## 2.2   Legislative Proposals for a TBOR Between 2008 and 2013

Between 2008 and 2012, several representatives and senators, led by Representative Xavier Becerra and Senator Jeff Bingaman, introduced proposed legislation several times that would require the Treasury Department, in consultation with the National Taxpayer Advocate, to publish a TBOR along the lines proposed by the TAS. H.R. 5716, 110th Cong. (introduced Apr. 8, 2008); H.R. 5047, 111th Cong. (introduced Apr. 15, 2010); S. 3215, 111th Cong. (introduced Apr. 15, 2010); H.R. 6050, 112th Cong. (introduced June 28, 2012); S. 3355, 112th Cong. (introduced June 28, 2012). Each of these legislative bills stated that the proposed TBOR statute would "not create or confer any rights or obligations not otherwise provided for under this title" (i.e., Title 26, the Internal Revenue Code). Instead, the purpose of the proposed TBOR legislation was so that taxpayers would have an easy-to-understand list of the rights and obligations established in other sections of the tax code. *See* 156 Cong. Rec. E559 (daily ed. Apr. 15, 2010) (statement of Rep. Becerra) ("[T]his legislation would require Treasury to publish an easy-to-understand Taxpayer Bill of Rights that would enumerate all taxpayers' rights and obligations, as well as their location in the tax code. Currently, these rights and obligations are scattered throughout the tax code and Internal Revenue Manual, making them neither accessible nor written in plain language that most taxpayers can understand."). None of these bills was enacted into law.

In 2013, Representative Peter Roskam introduced new proposed TBOR legislation. H.R. 2768, 113th Cong. (introduced July 22, 2013). Whereas the prior legislative bills had required the Treasury Department to publish a TBOR, Representative Roskam's version proposed amending the Internal Revenue Code "to clarify that a duty of the Commissioner of Internal Revenue is to ensure that Internal Revenue Service employees are familiar with and act in accord with certain

taxpayer rights." *Id.* In his introductory remarks, Representative Roskam explained that the ten

rights in his bill were all preexisting rights under current law but that he was introducing this

proposed legislation because the Commissioner of Internal Revenue apparently did not view it as

his responsibility to make sure that both he and other IRS employees knew about those rights:

> Taxpayers have the right to be informed, the right to be assisted, the right to be
> heard, the right to pay no more than the correct amount of tax, the right of appeal,
> the right of certainty, the right of privacy, the right of confidentiality, the right to
> representation, and the right to a fair and just tax system. That's current law, but
> here is where parts of things get lost in the shuffle in that, apparently, the
> Commissioner of the Internal Revenue Service doesn't view that as that person's
> responsibility to make sure, A, that the Commissioner knows it and, B, that other
> employees know it.

159 Cong. Rec. H5211 (daily ed. July 31, 2013) (statement of Rep. Roskam). Representative

Roskam stated that his bill was meant to "unambiguously say[]" that the Commissioner had a duty

to ensure that IRS employees complied with those rights. *Id.* The House of Representatives passed

the bill by voice vote and transmitted it to the Senate with the explanation that it was a bill "to

clarify that a duty of the Commissioner of Internal Revenue is to ensure that Internal Revenue

Service employees are familiar with and act in accord with certain taxpayer rights." 159 Cong.

Rec. S6198 (daily ed. Aug. 1, 2013). The bill was not enacted into law.

### 2.3   The TAS's 2013 Recommendations that the IRS Adopt a TBOR

In November 2013, the National Taxpayer Advocate issued a report entitled *Toward a More*

*Perfect Tax System: A Taxpayer Bill of Rights as a Framework for Effective Tax Administration*

(2013) (*Toward a More Perfect Tax System*), *available at* https://taxpayeradvocate.irs.gov/2013-

Annual-Report/downloads/Toward-a-More-Perfect-Tax-System-A-Taxpayer-Bill-of-Rights-as-a-

Framework-for-Effective-Tax-Administration.pdf (last visited May 14, 2018). The introduction

explained:

> The good news on this front is that the Internal Revenue Code provides dozens
> of taxpayer rights. Real rights. Substantive rights. Rights that in most cases provide
> taxpayers with opportunities to challenge arbitrary and capricious government
> actions. The bad news is that most taxpayers have no idea what their rights are and
> therefore often cannot take advantage of them. That is because taxpayer rights are
> scattered throughout the code and are not presented in a coherent way. Not
> surprisingly, in response to a taxpayer survey conducted for our office in 2012, less
> than half of all U.S. taxpayers said they believed they have rights before the IRS,
> and only 11 percent said they knew what those rights are.

> We can and must do a better job of making taxpayers aware of their rights and enabling them to assert these rights. Since 2007, I have repeatedly recommended adoption of a Taxpayer Bill of Rights that takes the multiple existing rights embedded in the code and groups them into ten broad categories, modeled on the U.S. Constitution's Bill of Rights. Why? Because I believe a thematic, principle-based list of core taxpayer rights would provide a foundational framework for taxpayers and IRS employees alike that would promote effective tax administration.

*Id.* at 1. The report recommended a taxpayer bill of ten rights: (1) "the right to be informed," (2) "the right to quality service," (3) "the right to pay no more than the correct amount of tax," (4) "the right to challenge the IRS's position and be heard," (5) "the right to appeal an IRS decision in an independent forum," (6) "the right to finality," (7) "the right to privacy," (8) "the right to confidentiality," (9) "the right to retain representation," and (10) "the right to a fair and just tax system, including access to the Taxpayer Advocate Service." *Id.* at 2–3 (capitalization removed). The report directed its recommendation for adoption of its proposed TBOR to the Commissioner of Internal Revenue (as opposed to Congress). *Id.* at 12.

The report stated that its recommended TBOR "does not aim to create new rights or remedies, only to group existing rights into categories that are easier for taxpayers and IRS employees to understand and remember. . . . Thus, a TBOR does not create new rights, but provides organizing principles — a framework — for statutory rights." *Id.* at 4, 6. The report further characterized its proposed TBOR as a statement of general rights, not absolute rights without exception, analogizing them to the Bill of Rights in the U.S. Constitution. *See id.* at 2. The report stated:

> Simply put, labels and presentation matter. Almost all Americans know we have a Bill of Rights, and many can name specific ones. The First Amendment right to free speech, for example, is widely known. When one digs deeper, it becomes clear that the right is not absolute (e.g., the First Amendment does not protect an individual's right to falsely scream "Fire!" in a crowded theater), and there are dozens of Supreme Court decisions that delineate the scope of the right. But the simplicity and clarity of a thematic Bill of Rights help Americans understand their rights in general terms, and this knowledge empowers them to assert their rights and learn the nuances when the need arises.

*Id.* at 2.

For the fifth right — the "right to appeal an IRS decision in an independent forum" — the report recommended that:

> Taxpayers are entitled to a prompt and impartial administrative appeal of IRS actions and have the right to receive a written response explaining the Appeals

Division's decision. Taxpayers generally have the right to take their cases to court to challenge an adverse final determination.

*Id.* at 10.

The report faulted IRS employees for not knowing about or not communicating information about these rights to taxpayers:

> While the Internal Revenue Code guarantees certain specific taxpayer protections, employees do not always communicate these rights to taxpayers at appropriate times. Generally, employees learn about specific taxpayer rights in a piecemeal way, without gaining a comprehensive perspective. Thus, IRS employees lack education and training on how fundamental rights apply throughout the tax filing and tax controversy process. Additionally, employees do not learn about the importance of taxpayer protections in reassuring taxpayers of the fundamental fairness of the tax system. While some employees receive initial training about taxpayer rights, that training is not regularly reinforced during later periodic trainings, such as Continuing Professional Education (CPE). Providing employees with a larger background of taxpayer rights is necessary to fully carry out the TBOR.
>
> . . . .
>
> TAS has found that even when employees receive initial training on taxpayer rights, they may not receive reminders or updates on this training. So while employees may remember that the TBOR includes fundamental taxpayer rights, such as the right to appeal or the right to be heard, they may not remember at what times these rights arise or realize when certain actions deprive taxpayers of them. Without continued education on taxpayer rights throughout his or her career, an employee may fail to incorporate a working knowledge of taxpayer rights into daily activities and interactions with taxpayers.

*Id.* at 23, 24–25. For example, the report discussed IRS employees' not knowing the significance of Tax Court deadlines and why those deadlines were important to taxpayers:

> [Internal Revenue Manual] sections sometimes include reminders for employees to ensure that they have taken a specific action to protect taxpayer rights. For example, in examination cases where the IRS issues a statutory notice of deficiency and the taxpayer has requested additional time to respond, the IRM advises employees to inform the taxpayer that any extension to submit additional documentation will not extend the time to petition Tax Court. However, employees may not understand why this is important for taxpayers: that if the taxpayer does not petition the Tax Court within a certain number of days, he or she will lose the ability to challenge the liability determination in Tax Court, thereby undermining the taxpayer's *right to an appeal in an independent forum*.

*Id.* at 27–28 (emphasis in original).

In its December 2013 annual report to Congress, the TAS largely repeated the recommendations from its November 2013 report that the Commissioner and the IRS adopt a TBOR. Taxpayer Advocate Serv., *2013 Annual Report to Congress* at 5–19 (2013), *available at*

https://taxpayeradvocate.irs.gov/2013-Annual-Report/full-2013-annual-report-to-congress.html

(last visited May 14, 2018).

### 2.4    The IRS's 2014 Adoption of a TBOR

The IRS engaged in "extensive discussions" with the TAS regarding a TBOR. *See* I.R.S. News Release IR-2014-72, 2014 WL 2590817, at *1 (June 10, 2014). Following these discussions, on June 10, 2014, the IRS announced the adoption of a TBOR, which it described as "tak[ing] the multiple existing rights embedded in the tax code and group[ing] them into 10 broad categories, making them more visible and easier for taxpayers to find on IRS.gov." *Id.* The IRS also updated its "Publication 1" describing the adopted TBOR. Internal Revenue Serv., *Publication 1: Your Rights as a Taxpayer* (Rev. 12-2014), *available at* https://www.irs.gov/pub/irs-prior/p1--2014.pdf (last visited May 14, 2018).

For the fifth right — the "right to appeal an IRS decision in an independent forum" — the IRS's revised Publication 1 stated:

> Taxpayers are entitled to a fair and impartial administrative appeal of most IRS decisions, including many penalties, and have the right to receive a written response regarding the Office of Appeals' decision. Taxpayers generally have the right to take their cases to court.

*Id.* at 1.

The IRS did not revise Revenue Procedure 87-24 (which gave the Director of the Tax Litigation Division discretion following consultations to determine that a tax case should not be considered by IRS Appeals) in response to the adoption of this TBOR.

### 2.5    The TAS's 2014 Recommendation that Congress Enact a Statutory TBOR

In its 2014 annual report, the TAS recommended that Congress enact the IRS's TBOR into statutory law. Taxpayer Advocate Serv., *2014 Annual Report to Congress* at 275–310 (2014) (*2014 TAS Report*), *available at* https://taxpayeradvocate.irs.gov/reports-to-congress/2014-annual-report-to-congress/full-report (last visited May 14, 2018). The report stated:

> In response to these concerns raised by the National Taxpayer Advocate, on June 10, 2014, the IRS formally adopted the Taxpayer Bill of Rights (TBOR). While this was a significant achievement for increasing taxpayers' awareness of their rights, and an important first step toward integrating taxpayer rights into all aspects of tax administration, more can be done to cement these fundamental concepts as a

permanent part of our tax system. Specifically, placing a list of the ten core taxpayer rights and five taxpayer responsibilities in the Code would reassure taxpayers that these rights are a fundamental part of our tax system. Furthermore, it would reinforce the unwritten social contract between taxpayers and the IRS by laying out in clear language what is expected of taxpayers and what rights they can expect the IRS to honor.

*Id.* at 275. For the fifth right — the "right to appeal an IRS decision in an independent forum" — the report made recommendations with respect to appeals before both IRS Appeals and the Tax Court. *See id.* at 284–88.

## 2.6    Congress's 2015 Enactment of a Statutory TBOR

In February 2015, Representative Roskam re-introduced his proposed legislation to enact a statutory TBOR. H.R. 1058, 114th Cong. (introduced Feb. 25, 2015). The bill was referred to the House Ways and Means Committee, which revised Representative Roskam's bill so that the ten rights listed in the proposed statutory TBOR exactly tracked the language of the IRS's 2014 TBOR. *Compare* H.R. 1058, 114th Cong. (reported Apr. 13, 2015) *with* I.R.S. News Release IR-2014-72, 2014 WL 2590817, at *1.[7] The Committee reported the reason that the proposed legislation was needed:

> The Committee has found examples of IRS employees showing disregard for the rights and protections afforded taxpayers under the Code, and that such disregard may be a result of lack of emphasis on the importance of such rights. Any public perception that such disregard is common and not taken seriously by upper management at the IRS undermines trust in the integrity of the IRS. The Committee believes that the public trust that the top management of the IRS is committed to ensuring such rights is imperative to good tax administration. Although the IRS has recently published a Taxpayer Bill of Rights, such publication does not itself carry force of law or impose any obligations on the management or employees of the IRS. Accordingly, codifying the requirement that the Commissioner assume responsibility to implement the bill of rights is warranted to ensure public trust.

H.R. Rep. No. 114-70, at 4 (2015). The Committee reported that the proposed legislation "adds to the Commissioner's duties the requirement to ensure that employees of the IRS are familiar with and act in accordance with taxpayer rights as afforded by other provisions of the Internal Revenue

---

[7] The House Ways and Means Committee's version had three technical changes from the IRS's version: in the fourth and fifth rights, the language "IRS's Position" and "IRS Decision" was changed to "the position of the Internal Revenue Service" and "a decision of the Internal Revenue Service," respectively, and the word "and" was added between the ninth and tenth right. The wording is otherwise identical.

Code." *Id.* The House of Representatives passed the bill in April 2015 by voice vote and transmitted it to the Senate.[8]

H.R. 1058 was not enacted as a stand-alone law. But the TBOR language from H.R. 1058 was added — unchanged from the version reported on by the House Ways and Means Committee and that the House passed in April 2015 and transmitted to the Senate — as part of the Protecting Americans from Tax Hikes Act of 2015, which the House added to the Senate's version of the Consolidated Appropriations Act, 2016. H.R. 2029, div. Q, tit. IV, subtit. A, § 401, 114th Cong. (engrossed House amendment Dec. 18, 2015). The Consolidated Appropriations Act, which included the PATH Act and its TBOR, was signed into law on December 18, 2015. Pub. L. No. 114-113, 129 Stat. 2242 (2015).

The PATH Act added a new paragraph (a)(3) to 26 U.S.C. § 7803. Following enactment of the PATH Act, 26 U.S.C. § 7803(a)(3) reads:

> In discharging his duties, the Commissioner shall ensure that employees of the Internal Revenue Service are familiar with and act in accord with taxpayer rights as afforded by other provisions of this title, including--
>
> (A) the right to be informed,
>
> (B) the right to quality service,
>
> (C) the right to pay no more than the correct amount of tax,
>
> (D) the right to challenge the position of the Internal Revenue Service and be heard,
>
> (E) the right to appeal a decision of the Internal Revenue Service in an independent forum,
>
> (F) the right to finality,
>
> (G) the right to privacy,
>
> (H) the right to confidentiality,
>
> (I) the right to retain representation, and
>
> (J) the right to a fair and just tax system.

---

[8] Several other bills with similarly worded proposed TBORs also were introduced in 2015. *See, e.g.*, S. 943, 114th Cong. (introduced Apr. 15, 2015); S. 951, 114th Cong. (introduced Apr. 15, 2015).

### 3. The IRS's Current Revenue Procedure Regarding Referring Tax Cases to IRS Appeals

In October 2015, the IRS published a notice that it was proposing revisions to Revenue Procedure 87-24 "to more accurately reflect the procedures utilized in managing the flow of docketed cases between the Office of Appeals (Appeals) and the Office of Chief Counsel (Counsel)." I.R.S. Notice 2015-72, 2015-44 I.R.B. 613, 613. The notice stated that "[t]he proposed update to Rev. Proc. 87-24 is not intended to materially modify the current practice of referring docketed cases to Appeals for settlement currently utilized in the vast majority of cases" and that "[t]he proposed revenue procedure clarifies that, except in rare circumstances, Counsel will refer cases docketed in Tax Court to Appeals for settlement consideration." *Id.* But the notice stated, "the proposed revenue procedure recognizes that there are cases and issues that should not be referred to Appeals or for which Counsel needs additional time before referring the case to Appeals. The proposed revenue procedure clarifies the procedures for when those situations arise." *Id.* Among other things, the IRS proposed revising the Revenue Procedure to provide that:

> Counsel will not refer to Appeals any docketed case or issue that has been designated for litigation by Counsel. In limited circumstances, a docketed case or issue will not be referred to Appeals if Division Counsel or a higher level Counsel official determines that referral is not in the interest of sound tax administration. For example, Counsel may decide not to refer a docketed case to Appeals in cases involving a significant issue common to other cases in litigation for which it is important that the IRS maintain a consistent position or in cases related to a case over which the Department of Justice has jurisdiction. If Counsel determines that a docketed case or issue will not be referred to Appeals, Counsel will notify the taxpayer that the case will not be referred to Appeals.

*Id.* § 3.03, 2015-44 I.R.B. at 614. The IRS invited public comment on its proposed revisions. *Id.* at 613.

The IRS received four comments in response to its notice. 2016-15 I.R.B. 577, 578. One of these comments was from the American Bar Association Section of Taxation, which asked the IRS to clarify the "sound tax administration" standard. Letter from Am. Bar Ass'n Section of Taxation to John Koskinen, Comm'r, Internal Revenue Serv. (Nov. 16, 2015), *available at* https://www.americanbar.org/content/dam/aba/administrative/taxation/policy/111615comments.

authcheckdam.pdf (last visited May 14, 2018).[9] The ABA Section of Taxation observed that "[u]nder the language in the draft revenue procedure, . . . determination [of whether or not to refer a case to IRS Appeals] is wholly within the discretion of Division Counsel under a new but undefined standard of 'sound tax administration.' Appeals has no role in the procedure. National Office Counsel has no required role." *Id.* at 7. The ABA Section of Taxation "respectfully suggest[ed] that the checks and balances imbedded in the current provision be retained and that the final revenue procedure elaborate and clarify the limited circumstances in which docketed cases will be ineligible to be returned to Appeals due to 'sound tax administration'" and "respectfully request[ed] that provisions be added to allow for taxpayer input into the decision similar to those in the designation process under [Internal Revenue Manual] § 33.3.6.2." *Id.*

On March 23, 2016, the IRS released Revenue Procedure 2016-22, which adopted the proposed October 2015 procedure revisions. Other than one "clarifying modification,"[10] the IRS did not make any changes to Section 3.03 from its October 2015 proposal. Under Revenue Procedure 2016-22 — which remains operative today — "Counsel will not refer to Appeals any docketed case or issue that has been designated for litigation by Counsel. In limited circumstances, a docketed case or issue that has not been designated for litigation will not be referred to Appeals if Division Counsel or a higher level Counsel official determines that referral is not in the interest of sound tax administration." Rev. Proc. 2016-22 § 3.03, 2016-15 I.R.B. 577, 578.


### 4. Facebook's Tax Case

In November 2011, the IRS initiated an audit of Facebook's tax years ending December 31, 2008 and December 31, 2009.[11] In January 2013, the IRS expanded its audit to include Facebook's

---

[9] The letter has also been attached to Facebook's opposition as an exhibit. Facebook Opp'n Ex. F – ECF No. 23-6.

[10] I.R.B. 2016-15 at 578 ("Treasury and the Service considered all comments received and adopted several of the suggestions by making clarifying modifications."). The final Revenue Procedure added the words "that has not been designated for litigation" to the second sentence of Section 3.03 (presumably to clarify the contrast with the first sentence, which concerns cases or issues that have been designated for litigation).

[11] Compl. – ECF No. 1 at 7 (¶ 34).

tax year ending December 31, 2010.[12] Facebook produced thousands of pages of documents in response to more than 200 IRS requests, made employees available for interviews, and voluntarily extended the statute of limitations five times.[13]

On January 25, 2016, the IRS asked Facebook to extend of the statute of limitations again.[14] Between February and May 2016, Facebook and the IRS discussed whether Facebook would extend the statute of limitations with certain conditions, including that the IRS would agree to issue a "30-day letter" that would give Facebook an opportunity to appeal the IRS Examination team's proposed tax adjustments to IRS Appeals.[15] Facebook and the IRS did not reach agreement about conditions whereby Facebook would extend the statute of limitations.[16]

On July 26, 2016, the IRS issued a Statutory Notice of Deficiency to Facebook.[17] On October 11, 2016, Facebook filed a petition before the U.S. Tax Court, seeking a redetermination of the tax deficiency that the IRS had determined.[18] On March 16, 2017, the IRS sent a letter to Facebook stating that it "will refuse to transfer Facebook's tax case to IRS Appeals," pursuant to Revenue Procedure 2016-22, and stating that referral to IRS Appeals "is not in the interest of sound tax administration."[19] The IRS has never provided Facebook an explanation of why IRS Counsel concluded that providing Facebook access to IRS Appeals was not in the interest of sound tax administration.[20]

---

[12] *Id.*

[13] *Id.* (¶ 35).

[14] *Id.* (¶ 36).

[15] *Id.* Subject to certain exceptions, "[i]n any case in which the district director has issued a preliminary or '30-day letter' and the taxpayer requests Appeals consideration and files a written protest when required . . . against the proposed determination of tax liability, . . . the taxpayer has the right (and will be so advised by the district director) of administrative appeal to the Appeals organization." 26 C.F.R. § 601.106(b).

[16] Compl. – ECF No. 1 at 7 (¶ 37).

[17] *Id.* (¶ 38).

[18] Petition, *Facebook, Inc. v. Comm'r*, No. 21959-16 (T.C. filed Oct. 11, 2016) (attached as IRS Mot. to Dismiss App'x 1 – ECF No. 19-1). The court may take judicial notice of court filings, as a matter of public record. *Mahoney v. Sessions*, 871 F.3d 873, 876 n.2 (9th Cir. 2017).

[19] Compl. – ECF No. 1 at 8 (¶ 42).

[20] *Id.* (¶ 44).

### 5. Facebook's Legal Claims

Facebook brings two claims under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. First, Facebook alleges that the IRS's issuing Revenue Procedure 2016-22 (which granted IRS Counsel the authority to deny taxpayers access to IRS Appeals if referral is "not in the interest of sound tax administration") was arbitrary, capricious, an abuse of discretion, not in accordance with the law, exceeded statutory jurisdiction, authority, or limitation, or was short of a statutory right.[21] Second, Facebook alleges that the IRS's denying Facebook access to IRS Appeals for its tax case was arbitrary, capricious, an abuse of discretion, not in accordance with the law, exceeded statutory jurisdiction, authority, or limitation, or was short of a statutory right.[22] Facebook also brings a claim for "mandamus-like relief," alleging that it has the right to access IRS Appeals and asking that this court order the IRS to refer its tax case to IRS Appeals.[23]

### STANDARD OF REVIEW

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

The IRS has moved to dismiss Facebook's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.[24] A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014).

---

[21] *Id.* at 9–10 (¶ 55).

[22] *Id.* at 10 (¶ 60).

[23] *Id.* at 10–11 (¶¶ 65–67 and Request for Relief).

[24] IRS Mot. – ECF No. 19 at 8.

This is a facial attack. The court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiff[]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

The IRS raises two main arguments in its Rule 12(b)(1) motion: (1) Facebook lacks standing and (2) the IRS's decision not to refer Facebook's tax case is not reviewable under the APA. Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). APA reviewability also pertains to the court's subject-matter jurisdiction: the government has sovereign immunity (which limits the subject-matter jurisdiction of federal courts) and can be sued only to the extent that it has waived its immunity, and the scope of its immunity waiver (e.g., through the APA) thus is also properly raised on a Rule 12(b)(1) motion to dismiss. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)).

If a court dismisses a complaint, it ordinarily will grant leave to amend, but "[i]t is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983)).

# ANALYSIS

## 1. Standing

### 1.1 Governing Law

Federal-court jurisdiction extends only to "cases" and "controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"The 'irreducible constitutional minimum' of standing consists of three elements." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (internal ellipsis omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish the first of these elements — injury in fact — "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

### 1.2   Application

The sole injury that Facebook alleges is that "it was denied access to a statutorily mandated appeals process," i.e., the right to take its tax case to IRS Appeals.[25] But Facebook fails to establish that it has a legally protected right to take its tax case to IRS Appeals. First, taxpayers did not have an enforceable right to take tax cases to IRS Appeals before the 2015 PATH Act and the statutory enactment of a TBOR. Second, the 2015 TBOR did not grant taxpayers new substantive rights. Third, even if the TBOR had granted taxpayers new rights, Facebook fails to establish that the TBOR right on which it relies — "the right to appeal a decision of the Internal Revenue Service in an independent forum," 26 U.S.C. § 7803(a)(3)(E) — refers to a right to take its tax case to IRS Appeals, as opposed to another independent forum such as the Tax Court. Because Facebook has no legally enforceable right to take its tax case to IRS Appeals, the IRS has not invaded a legally protected interest by refusing to refer Facebook's case to IRS Appeals, and Facebook consequently lacks standing.

---

[25] Facebook Opp'n – ECF No. 22 at 26–27; *see* Compl. – ECF No. 1 at 2 (¶ 1), 8 (¶¶ 41, 46), 9 (¶ 52).

### 1.2.1    Facebook has no pre-TBOR enforceable right to take its tax case to IRS Appeals

The 1998 RRA imposed a statutory requirement for the IRS to create and maintain an independent Office of Appeals. The RRA also granted taxpayers an enforceable right to take certain matters to IRS Appeals, such as certain matters relating to liens and levies. 26 U.S.C. §§ 6320(b)(1), 6330(b)(1). But that does not mean that Facebook has a right to take its tax case to IRS Appeals. Courts have held that taxpayers in Facebook's situation do not have an enforceable right to take their tax cases to IRS Appeals. *New Hope Servs.*, 285 F.3d at 572; *Estate of Weiss*, 2005 WL 3418160, at *1–2; *Swanson*, 106 T.C. at 99–100; *Vosters*, 1989 WL 90554, at *2. Facebook does not cite anything in the RRA or any pre-TBOR law that compels a contrary conclusion.

Instead of statutes or case law, Facebook cites various statements by IRS executives and IRS publications that it claims establish that taxpayers had an enforceable right to take their cases to IRS Appeals.[26] But these statements and publications are not binding and do not have the force of law. *See, e.g.*, *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 147 (2d Cir. 2013) ("IRS publications . . . do not have the force of law.") (quoting *United States v. Josephberg*, 562 F.3d 478, 498 (2d. Cir. 2009)); *Qureshi v. United States*, 67 Fed. Cl. 783, 788 (2005) ("[O]ral statements of IRS employees are not binding on the government.") (citing *Estate of Akin v. United States*, 31 Fed. Cl. 89, 97 (1994), *aff'd*, 43 F.3d 1487 (Fed. Cir. 1994)), *aff'd*, 200 F. App'x 973 (Fed. Cir. 2006).[27] Similarly, Facebook cites to IRS procedural rules that it claims establish that

---

[26] *See* Facebook Opp'n – ECF No. 22 at 16, 24–25 (citing statements and publications).

[27] Facebook cites *United States v. Santos*, 372 F.2d 177 (2d Cir. 1967), and *Walsonavich v. United States*, 335 F.2d 96 (3d Cir. 1964), for the proposition that IRS publications are binding with respect to legal interpretations. Its reliance on these cases is misplaced. *Santos* was a criminal prosecution for assault, and the statement at issue was an affidavit by a narcotics agent (who witnessed the assault) identifying the assailant. *Santos*, 372 F.2d at 179. That case does not apply to the question presented here regarding agency statements and publications. *Walsonavich* involved an agreement between the IRS and an individual taxpayer extending the time that the IRS could assess taxes (which the court held also extended the time the taxpayer had to seek a refund). *Walsonavich*, 335 F.2d at 100–01. The court held that the IRS was bound by the actions of its agents in entering into that agreement with the taxpayer. *Id.* at 101. But that case does not apply to the question presented here, which concerns

*(cont'd)*

taxpayers had an enforceable right to take their cases to IRS Appeals.[28] But these procedural rules are not binding and do not have the force of law. *See, e.g.*, *Ward v. Comm'r*, 784 F.2d 1424, 1431 (9th Cir. 1986) (IRS procedural rules "do[] not have the force and effect of law"); *Estate of Weiss*, 2005 WL 3418160, at *1 ("[N]either Rev. Proc. 87-24, supra, nor section 601.106, Statement of Procedural Rules, affords the estate a substantive right to take its case to Appeals. It is well established that general statements of policy and rules governing internal agency operations or 'housekeeping' matters, which do not have the force and effect of law, are not binding on the agency issuing them and do not create substantive rights in the public.") (internal quotation marks omitted) (citing cases); *Vosters*, 1989 WL 90554, at *2 (the IRS's "procedural rules are directory rather than mandatory"). Facebook cites to no statutes or case law that establish that it had a pre-TBOR right to take its case to IRS Appeals.[29]

### 1.2.2    The 2015 TBOR did not grant Facebook any new enforceable rights

The statutory TBOR enacted as part of the 2015 PATH Act did not grant new enforceable rights. To the contrary, the statutory text explicitly states that the ten rights listed in the TBOR were all "taxpayer rights afforded by *other* provisions of [Title 26]," 26 U.S.C. § 7803(a)(3) (emphasis added) — meaning, no right was a new right created by the TBOR itself. If a right did not exist before the enactment of the TBOR, the TBOR did not create it as a new right.

---

agency statements and publications generally, not an agreement that the IRS entered into with Facebook specifically.

[28] *See* Facebook Opp'n – ECF No. 22 at 16 (citing 26 C.F.R. § 601.106(b)).

[29] Facebook raised a new argument at the April 19, 2018 hearing, claiming that the RRA gave taxpayers a right to an early referral of one or more unresolved tax issues to IRS Appeals. 26 U.S.C. § 7123(a) (enacted by RRA § 3465, 112 Stat. at 768). Facebook argued that it would make no sense for Congress to establish a right to take early issues to IRS Appeals but not a right to take the rest of the issues to IRS Appeals. But the RRA did not give taxpayers a right to early referral to IRS Appeals; it instructed the Treasury Department to "prescribe procedures by which any taxpayer may *request* early referral" to IRS Appeals. *Id.* (emphasis added). The IRS prescribed procedures by which a taxpayer can request early referral. Rev. Proc. 99-28, 1999-2 C.B. 109. But the procedures also provide that IRS Collection or Examination has the right to approve or deny the request, and the taxpayer has no right to appeal if IRS Collection or Examination decides not to approve the request. *Id.* §§ 2.02(2), 2.09, 1999-2 C.B. at 109–10. Facebook cites nothing establishing that the RRA granted taxpayers an enforceable right to compel an early referral of issues to IRS Appeals.

1    Instead, what the statutory TBOR did was to impose an affirmative obligation on the

2    Commissioner of Internal Revenue to "ensure that employees of the Internal Revenue Service are

3    familiar with and act in accord with" preexisting taxpayer rights established in other provisions of

4    the Internal Revenue Code. In other words, the TBOR directed the Commissioner to, for example,

5    better manage and train IRS employees to ensure that IRS employees know what rights taxpayers

6    have and act in a way that respects those rights.

7        The legislative history confirms this plain reading of the statutory language. While there is no

8    direct legislative history for the 2015 PATH Act or the Consolidated Appropriations Act relating

9    to the TBOR, there is legislative history for the earlier 2015 TBOR bill that the House Ways and

10   Means Committee reported on and the House passed and referred to the Senate (TBOR language

11   that was later enacted without alteration in the PATH Act). The House Ways and Means

12   Committee reported that the reason for the legislation was not to grant taxpayers new rights but

13   instead was to address the issue of "IRS employees showing disregard for the rights and

14   protections afforded taxpayers under the Code" by "add[ing] to the Commissioner's duties the

15   requirement to ensure that employees of the IRS are familiar with and act in accordance with

16   taxpayer rights as afforded by other provisions of the Internal Revenue Code." H.R. Rep. No. 114-

17   70, at 4. While this legislative history is not dispositive, it is consistent with the plain-text reading

18   of the statutory text that the TBOR did not grant new rights but instead imposed a management-

19   and-training obligation on the Commissioner to make sure that IRS employees knew about and

20   acted in accordance with preexisting rights. Facebook does not cite any legislative history from

21   any of the attempts to enact a statutory TBOR that suggests that any proposal would have granted

22   new substantive rights. Instead, the legislative history shows that none of the proposed TBORs

23   was intended to create new rights. *See, e.g.*, H.R. 5716, 110th Cong. (introduced Apr. 8, 2008)

24   ("This statement of rights and obligations does not create or confer any rights or obligations not

25   otherwise provided for under this title."); H.R. 5047, 111th Cong. (introduced Apr. 15, 2010)

26   (same); S. 3215, 111th Cong. (introduced Apr. 15, 2010) (same); H.R. 6050, 112th Cong.

27   (introduced June 28, 2012) (same); S. 3355, 112th Cong. (introduced June 28, 2012) (same); 159

28   Cong. Rec. H5211 (daily ed. July 31, 2013) (statement of Rep. Roskam) (describing TBOR rights

as "current law"); *see also Toward a More Perfect Tax System* at 4, 6 (proposed TBOR "does not aim to create new rights or remedies, only to group existing rights into categories that are easier for taxpayers and IRS employees to understand and remember. . . . Thus, a TBOR does not create new rights, but provides organizing principles — a framework — for statutory rights."); I.R.S. News Release IR-2014-72, 2014 WL 2590817, at *1 (TBOR is made up of "multiple existing rights embedded in the tax code").

Facebook argues that the PATH Act's statutory TBOR must have created new rights "beyond those existing prior to [the TBOR's] codification," because if it created no new rights, it would be a nullity.[30] Not so. First, the statutory TBOR imposes duties on the IRS Commissioner to manage and train IRS employees regarding taxpayer rights. *See generally Toward a More Perfect Tax System* at 23–36 (discussing proposals for improved management and training of IRS employees); Amanda Bartmann, *Making Taxpayer Rights Real: Overcoming Challenges to Integrate Taxpayer Rights into a Tax Agency's Operations*, 69 Tax Law. 597, 614–24 (2016) (same). Second, Facebook's interpretation that the TBOR itself created new rights ignores the statutory language that the TBOR rights are "afforded by *other* provisions of this title." 26 U.S.C. § 7803(a)(3) (emphasis added).

Moreover, Facebook's argument makes no sense when one considers the ten TBOR rights collectively. *Cf. Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) ("A 'basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.'") (quoting *Hughes Air Corp. v. Pub. Utils. Comm'n*, 644 F.2d 1334, 1338 (9th Cir. 1981)). Facebook focuses on only one TBOR right — "the right to appeal a decision of the Internal Revenue Service in an independent forum" — but Facebook's arguments, if they were correct, would apply to the other nine rights too. For example, the first

---

[30] *See* Facebook Opp'n – ECF No. 22 at 21 (arguing that "[t]he effect of [the TBOR] is to ensure a right beyond those existing prior to codification," as an interpretation that the TBOR did not create new rights "essentially reads TBOR out of existence").

right is "the right to be informed[.]" 28 U.S.C. § 7803(a)(3)(A). Applying Facebook's argument, this provision must have created a new substantive right "beyond those existing prior to [the TBOR's] codification."[31] A new right to be informed about what? And when? The TBOR does not say, and neither does Facebook. It is implausible that the TBOR created ten new substantive rights that it defined so poorly. The logical reading of the TBOR is not that it created some new, wholly nebulous rights, but that it created no new rights at all, and instead that Congress meant what it said when it said that the TBOR rights were rights "afforded by other provisions of this title," not new rights created by the TBOR itself.[32]

### 1.2.3 Even assuming that the 2015 TBOR granted Facebook a new enforceable right to appeal "in an independent forum," Facebook fails to establish that the "independent forum" must be IRS Appeals

Even assuming that the statutory TBOR granted taxpayers new enforceable rights, Facebook does not establish that "the right to appeal a decision of the Internal Revenue Service in an independent forum," 26 U.S.C. § 7803(a)(3)(E), necessarily confers a right to take its tax case to IRS Appeals, as opposed to other independent forums such as the Tax Court.[33]

When Congress intends to grant a right of access to IRS Appeals, it says "the Internal Revenue Service Office of Appeals." *See, e.g.*, 26 U.S.C. §§ 6320(b)(1), 6330(b)(1), 7122(e)(2). Congress could have chosen to similarly codify a right to appeal to IRS Appeals in the 2015 TBOR. It did not. Instead, it used the term "independent forum" — which includes other forums such as Tax Court. *See A. & A. Tool & Supply Co. v. Comm'r*, 182 F.3d 300, 304 (10th Cir. 1950) ("The Tax Court and the Board of Tax Appeals, which it succeeded, was created to afford a taxpayer an independent forum where he could be heard speedily, equitably and impartially on a tax assessment which he thought had been improperly levied or assessed."). Indeed, in the PATH Act

---

[31] *Cf. id.*

[32] "The right to be informed," for example, is delineated in numerous other provisions of Title 26, not in the TBOR itself. *See, e.g.*, 26 U.S.C. §§ 6212(a), 6320(a), 6330(a).

[33] The right for a taxpayer to file a petition in the Tax Court is delineated in Title 26, *see, e.g.*, 26 U.S.C. § 6213(a), and thus is consistent with the TBOR's statement that the TBOR rights are rights "afforded by other provisions of this title," 26 U.S.C. § 7803(a)(3).

that enacted the 2015 statutory TBOR, Congress amended the Tax Court's establishing statute to clarify that the Tax Court is an independent forum. PATH Act, tit. IV, subtit. B, pt. 3, § 441, 129 Stat. at 3126 ("The Tax Court is not an agency of, and shall be independent of, the executive branch of the Government.") (amending 26 U.S.C. § 7441).

Facebook points to the lead-in to the statutory TBOR, which reads, "the Commissioner shall ensure that *employees of the Internal Revenue Service* . . . act in accord with taxpayer rights as afforded by other provisions of this title."[34] Facebook claims that "[t]his language can have only one meaning: the independent forum referenced by Congress must be one that can be controlled by the Commissioner or employees of the IRS[.]"[35] Facebook argues that IRS Appeals is controlled by IRS employees, whereas the Tax Court is not, and thus only IRS Appeals can be the "independent forum" referenced in the TBOR.[36] But Facebook's conclusion — that the "independent forum" must be controlled by IRS employees — does not follow from the statutory lead-in language it cites. That the TBOR requires the Commissioner to ensure that IRS employees act in accord with certain rights does not mean that IRS employees must control the means through which these rights are provided.

As before, it is helpful to look at the ten TBOR rights collectively. All of them are subject to the same lead-in language. For example, the ninth TBOR right is "the right to retain representation[.]" 28 U.S.C. § 7803(a)(3)(I). Facebook's interpretation of the lead-in language obviously does not apply because a taxpayer's representation cannot "be controlled by the Commissioner or employees of the IRS."[37] The TBOR "right to retain representation" is a right for taxpayers to retain independent representation as delineated in other provisions of Title 26. *See, e.g.*, 26 U.S.C. § 7521(b)(2), (c). It is not a requirement that IRS employees must control the representation. Similarly, the TBOR "right to appeal . . . in an independent forum" is a right for

---

[34] Facebook Opp'n – ECF No. 22 at 19 (emphasis and ellipsis in original).

[35] *Id.*

[36] *See id.* at 19 & n.12.

[37] *Cf. id.* at 19.

taxpayers to appeal in an independent forum as delineated in other provisions of Title 26. It is not a requirement that IRS employees must control the forum. Nothing in the TBOR says that the independent forum must be only IRS Appeals, *see, e.g.*, 26 U.S.C. §§ 6320(b)(1), 6330(b)(1), and cannot be another forum such as the Tax Court, *see, e.g.*, 26 U.S.C. § 6213(a).

Facebook argues that the TBOR's "independent forum" cannot include the Tax Court because access to the Tax Court was guaranteed by statute before the enactment of the TBOR.[38] But that guarantee is consistent with the TBOR's pronouncement that its rights are "afforded by other provisions of [Title 26]," not rights conferred by the TBOR itself. 26 U.S.C. § 7803(a)(3). Facebook argues that because access to the Tax Court is guaranteed by statute, IRS employees cannot deny taxpayers access to the Tax Court, and hence a TBOR guarantee of access to the Tax Court is meaningless.[39] But whether a right exists in statute is separate from whether IRS employees know about and act in accord with that right. The TAS explained this distinction: "[w]hile the Internal Revenue Code guarantees specific taxpayer protections, employees do not always communicate these rights to taxpayers at appropriate times. . . . [and] may not remember at what times these rights arise or realize when certain actions deprive taxpayers of them." *Toward a More Perfect Tax System* at 23–24. The TBOR does not create statutory rights; instead, it addresses IRS employees' interactions with taxpayers.

Facebook claims that "the legislative history of the RRA, the advocacy by the TAS, and the legislative history of the PATH Act each compels the conclusion that 26 U.S.C. § 7803 refers to an independent *administrative* forum," and hence it must refer to IRS Appeals (and not to non-administrative forums like the Tax Court).[40] This is incorrect. As discussed above, the RRA granted taxpayers in certain situations a right to take their cases to IRS Appeals, but it did not grant a right to take cases to IRS Appeals generally. And the advocacy by the TAS and the legislative history of the proposed TBOR bills in Congress confirm that "the right to appeal . . . in

---

[38] *See id.* at 22.

[39] *See id.*

[40] *Id.* at 22–23 (emphasis in original).

an independent forum" encompassed the right to appeal in a judicial forum like the Tax Court, in addition to any rights a taxpayer might have to access IRS Appeals. While the TAS's 2007 annual report to Congress envisioned "the right of appeal" as encompassing administrative appeals to IRS Appeals, *2007 TAS Report* at 487, the TAS's later reports leading up to the enactment of the statutory TBOR understood "the right to appeal . . . in an independent forum" to include petitions in the Tax Court. *Toward a More Perfect Tax System* at 10 ("Taxpayers generally have the right to take their cases to court to challenge an adverse final determination."); *id.* at 27–28 ("[I]f the taxpayer does not petition the Tax Court within a certain number of days, he or she will lose the ability to challenge the liability determination in Tax Court, thereby undermining the taxpayer's *right to an appeal in an independent forum*.") (emphasis in original); *2014 TAS Report* at 284–88 (making recommendations in connection with "the right to appeal . . . in an independent forum" for both IRS Appeals and the Tax Court); *see also Toward a More Perfect Tax System* at 2 (rights in a bill of rights are "not absolute" and are subject to "nuances"). Facebook cites to nothing that establishes that "the right to appeal . . . in an independent forum" codified in 26 U.S.C. § 7803(a)(3)(E) refers to an "independent administrative forum" to the exclusion of other forums such as the Tax Court. Facebook argues that "[t]he words 'Tax Court' do not even appear in the Senate or House reports for the PATH Act."[41] But the words "Tax Court" appear in the statutory text of the PATH Act, which amended the Tax Court's establishing statute to clarify that it is an independent forum. PATH Act, tit. IV, subtit. B, pt. 3, § 441, 129 Stat. at 3126 ("The Tax Court is not an agency of, and shall be independent of, the executive branch of the Government.") (amending 26 U.S.C. § 7441).

*            *            *

Facebook did not have an enforceable right to take its tax case to IRS Appeals under the RRA or at any point before the enactment of the PATH Act. *New Hope Servs.*, 285 F.3d at 572; *Estate of Weiss*, 2005 WL 3418160, at *1–2; *Swanson*, 106 T.C. at 99–100; *Vosters*, 1989 WL 90554, at

---

[41] *Id.* at 23.

*2. The PATH Act and its statutory TBOR did not grant Facebook any new enforceable rights. And even if they had, they did not grant Facebook a new enforceable right to take its tax case to IRS Appeals specifically, as opposed to other independent forums such as the Tax Court. Facebook has no legally protected right to take its tax case to IRS Appeals. Facebook therefore does not meet the essential element of Article III standing that it suffered an invasion to a legally protected interest. *Spokeo*, 136 S. Ct. at 1548; *see, e.g.*, *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997) ("[I]f the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue."); *Arjay, Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) (plaintiffs lack standing where "the injury they assert is to a nonexistent right").[42]

## 2. The Administrative Procedure Act

### 2.1 Governing Law

"Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts." *Vacek*, 447 F.3d at 1250. "The United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." *Id.* (citing *Blue Fox*, 525 U.S. at 260). "The Supreme Court has 'frequently held that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign.'" *Id.* (internal ellipsis omitted) (quoting *Blue Fox*, 525 U.S. at 261).[43]

The United States enacted a limited waiver of sovereign immunity in Section 702 of the APA, which reads, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief

[42] Several bills have been introduced in Congress that would require the IRS to allow the taxpayer an opportunity for administrative review by IRS Appeals before the IRS may issue a Statutory Notice of Deficiency. *See, e.g.*, S. 2809, 114th Cong. (introduced Apr. 18, 2016); H.R. 3220, 115th Cong. (introduced July 13, 2017). But those bills are not the current law, and under current law, Facebook does not have an enforceable right to take its tax case to IRS Appeals.

[43] The United States's sovereign immunity extends to agencies and officers of the United States acting in their official capacity. *Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003).

other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]

5 U.S.C. § 702. Facebook relies on the APA in bringing its claims against the IRS here.

The APA sets out several requirements for plaintiffs bringing APA claims. Among other things, for a claim to proceed under the APA, the challenged agency action (if not made reviewable by statute[44]) must be a "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704; *see Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017) ("§ 704's requirement that to proceed under the APA, agency action must be final or otherwise reviewable by statute is an independent element without which courts may not determine APA claims.").[45] To constitute a "final agency action," two conditions must be met: "'first, the action must mark the consummation of the agency's decision making process . . . it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198–99 (9th Cir. 1998) (ellipsis in original) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997)).

## 2.2 Application

### 2.2.1 The IRS's issuance of Revenue Procedure 2016-22 is not reviewable because it was not a final agency action

The IRS's issuance of Revenue Procedure 2016-22 is not a final agency action because it is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." Revenue Procedure 2016-22 is an internal procedural rule that does not create or determine any rights, obligations, or legal consequences. *See, e.g.*, *Estate of Shapiro v. Comm'r*, 111 F.3d 1010, 1018 (2d Cir. 1997) (a Revenue Procedure "is not considered as a rule

---

[44] Facebook does not claim that any agency action here was made reviewable by statute.

[45] The Ninth Circuit has held that Section 704's requirement that the challenged agency action must be a "final agency action" is not a limit on Section 702's waiver of sovereign immunity, but it is a limit the justiciability of APA claims in a federal court. *Navajo Nation*, 876 F.3d at 1172.

which confers rights upon taxpayers but rather is a mere internal procedural guide and is not mandatory"); *Estate of Weiss*, 2005 WL 3418160, at *1 ("It is well established that general statements of policy and rules governing internal agency operations or 'housekeeping' matters, which do not have the force and effect of law, are not binding on the agency issuing them and do not create substantive rights in the public.") (internal quotation marks omitted) (citing cases). It is thus not reviewable under the APA. *Cf. Alliance for the Wild Rockies v. U.S. Forest Serv.*, 351 F. App'x 167, 168 (9th Cir. 2009) (holding that internal rule set was not reviewable under the APA because it "was simply an internal document that is not final agency action") (citing *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *Stauffer Chem. Co. v. FDA*, 670 F.2d 106, 108 (9th Cir. 1982)). Facebook's argument to the contrary depends on its assumption that taxpayers had an enforceable right to take their tax cases to IRS Appeals, and that the IRS's issuance of Revenue Procedure 2016-22 altered or abrogated that right. But as described above, taxpayers do not have an enforceable right to take their tax cases to IRS Appeals. Revenue Procedure 2016-22 did not alter this non-right or otherwise determine any rights, obligations, or legal consequences. It therefore is not a final agency action that is reviewable under the APA.

### 2.2.2 The IRS's decision not to refer Facebook's tax case to IRS Appeals is not reviewable because it was not a final agency action

The IRS's decision not to refer Facebook's tax case to IRS Appeals similarly is not a final agency action because it is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." Facebook retains its right to challenge the IRS's tax-deficiency determination before the Tax Court (or to try to negotiate a settlement with IRS Counsel), and it is Facebook's and the IRS's litigation (and/or negotiation) going forward that will ultimately determine the parties' rights, obligations, and legal consequences. *Cf. City of Oakland v. Holder*, 798 F.3d 1159, 1166–67 (9th Cir. 2015) (government decision to file a lawsuit is not a final agency action, because filing a lawsuit does not determine any rights or obligations; "any rights, obligations, and legal consequences are to be determined later by a judge"). Again, Facebook's argument to the contrary depends on its assumption that it had an enforceable right to take its tax case to IRS Appeals, and that the IRS's decision not to refer its case to IRS Appeals

foreclosed that right. But as described above, Facebook does not have this right. The IRS's decision not to refer Facebook's tax case to IRS appeals did not alter this non-right or otherwise determine any rights, obligations, or legal consequences. It therefore is not a final agency action that is reviewable under the APA.

*    *    *

Neither of the agency actions that Facebook challenges is a final agency action. The court therefore may not determine Facebook's APA claims and must dismiss them for lack of subject-matter jurisdiction. *Navajo Nation*, 876 F.3d at 1171; *Gallo Cattle*, 159 F.3d at 1198.

## 3. Mandamus

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is available only when '(1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.'" *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003) (quoting *Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995)). "If a plaintiff has no legal entitlement to the relief sought, a 'clear and certain' claim cannot exist, and the writ will not lie." *Id.*

Facebook's claim is not clear, certain, or free from doubt, and it has no legal entitlement to the relief sought. The court thus denies Facebook's claim for mandamus.

**CONCLUSION**

The court grants the IRS's motion to dismiss.

Because the court rules as a matter of law that Facebook has no legally enforceable right to compel the IRS to refer its case to IRS Appeals, the court dismisses the complaint with

prejudice. There are no deficiencies in the complaint that can be cured, and thus leave to amend would be futile. *Cf. Serra v. Lapin*, 600 F.3d 1191, 1195 (9th Cir. 2010).

**IT IS SO ORDERED.**

Dated: May 14, 2018

_____
LAUREL BEELER
United States Magistrate Judge